**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

---

**RICHARD P. GRABER**
**821 West State Street**
**Milwaukee, Wisconsin 53233**

**Plaintiff,**

**MILWAUKEE COUNTY MEDICAL PLAN**
**c/o CT Corporation System**
**8040 Excelsior Drive, Suite 200**
**Madison, WI 53717**

**Involuntary Plaintiff,**

**v.**

**SHERIFF DAVID A. CLARKE, JR.**
**Individually and In His Official Capacity**
**821 West State Street**
**Milwaukee, Wisconsin 53233**

**Case No.: 11-C-1038**

**EDWARD H. BAILEY**
**Individually and In His Official Capacity**
**821 West State Street**
**Milwaukee, Wisconsin 53233, and**

**COUNTY OF MILWAUKEE**
**901 North Ninth Street, Room 105**
**Milwaukee, WI 53233**

**Defendants.**

---

**AMENDED COMPLAINT**

---

Plaintiff, Richard P. Graber, bases his Amended Complaint against the above-named Defendants on the following allegations:

## NATURE OF THE CASE

1. Plaintiff brings this action pursuant to 42 U.S.C. § 1983 to protect Plaintiff's First Amendment rights to free exercise of speech and association without retaliation.

2. Plaintiff also brings this action pursuant to Wisconsin Chapter 164 – Law Enforcement Officers' Bill of Rights to protect Plaintiff's right to engage in political activity without recrimination or discrimination.

## JURISDICTION AND VENUE

3. Jurisdiction over Plaintiff's claims under the First Amendment and Wisconsin Chapter 164 are conferred on this Court by 42 U.S.C. § 1983, and correspondingly, 28 U.S.C. §§ 1331 and 1367. These statutory provisions confer original and supplemental jurisdiction on this Court over these causes of action.

4. The amount in controversy exceeds $75,000.00, excluding interest and costs.

5. The Eastern District of Wisconsin is the proper federal venue for this action pursuant to 28 U.S.C. § 1391 because Plaintiff resides within the Eastern District and the unlawful actions occurred in the Eastern District.

## PARTIES

6. Plaintiff Richard P. Graber ("Graber") is an adult citizen of the State of Wisconsin, residing in the County of Milwaukee, whose work address is 821 West State Street, Room 408, Milwaukee, Wisconsin 53233, and has at all times pertinent hereto been employed as a sworn Deputy Sheriff Sergeant with the Milwaukee County Sheriff's Office and is a member of the Milwaukee Deputy Sheriffs' Association.

7. Involuntary Plaintiff, Milwaukee County Medical Plan, ("MCMP") is, upon information and belief, an insurance corporation conducting business in the State of Wisconsin,

with offices of its Registered Agent, CT Corporation System, located at 8040 Excelsior Drive, Suite 200, Madison, WI 53717. Upon information and belief, MCMP may have made certain payments on behalf of the Plaintiff, with respect to medical, hospital, and disability expenses that were incurred by the Plaintiff as hereafter described, and may be obliged to make such payments in the future. By reason of these payments, MCMP may have an interest in any recovery herein to the extent of its payments, however, subject to the net made-whole rules.

8. Defendant David A. Clarke, Jr. ("Sheriff Clarke") is the Sheriff of the Milwaukee County Sheriff's Office. His offices are located at 821 West State Street, Milwaukee, Wisconsin 53233. Sheriff Clarke has ultimate control over actions in the Sheriff's Office, including assignments and policymaking. At all times pertinent, Sheriff Clarke was acting in his official capacity as Sheriff under the color of law in accord with Milwaukee County policy and/or custom. His actions were sanctioned by those in Milwaukee County who are empowered to make Milwaukee County policy and/or custom. Sheriff Clarke qualifies as a policymaker because his actions alone reflect the policy and/or customs of Milwaukee County. Sheriff Clarke is a municipal employer within the meaning of Wis. Stat. § 111.70(1)(j).

9. Defendant Edward H. Bailey ("Bailey") is an adult citizen of the State of Wisconsin, residing in the County of Milwaukee, whose work address is 821 West State Street, Milwaukee, Wisconsin, 53233, and has at all times pertinent been employed as a sworn Inspector with the Milwaukee County Sheriff's Office.

10. Defendant, Milwaukee County, is a municipal corporation, organized and existing under the laws of the State of Wisconsin with offices located at 901 North Ninth Street, Milwaukee, Wisconsin 53233, and is the municipal employer of Deputy Sheriffs and Deputy Sheriff Sergeants in the Sheriff's Office within the meaning of Wis. Stat. § 111.70(1)(j). Sheriff

Clarke is Milwaukee County's agent. Milwaukee County is directly liable for damages arising out of Sheriff Clarke's acts and omissions because Sheriff Clarke was acting at all pertinent times within his official capacity under color of law and under the policy and/or custom of Milwaukee County.

## OPERATIVE FACTS

11. Graber is employed as a sworn Deputy Sheriff Sergeant with the Milwaukee County Sheriff's Office. Since 2007, Graber has served as vice president of the Milwaukee Deputy Sheriffs' Association's ("Association") executive board. In that capacity, Graber represents Association members in a wide range of issues, including discipline hearings, grievances, and collective bargaining.

12. On June 24, 2010, a decorative concrete panel fell from the O'Donnell Park parking structure located in Milwaukee County, Wisconsin, killing one person and injuring two others. The collapse resulted in the entire O'Donnell Park parking structure being closed indefinitely and fences being erected to keep out the public. O'Donnell Park is under the jurisdiction of the Sheriff's Office and the Sheriff's Office participated in securing the scene and preventing the public from entering the parking structure. Sheriff Clarke assigned Deputy Sheriffs to O'Donnell Park.

13. The Sheriff's Office ordered Deputy Sheriffs in the Association to work mandatory overtime to patrol and secure O'Donnell Park.

14. The Sheriff's Office ordered almost exclusively Association members from the County Correctional Facility–Central ("CCF-C") to work the mandatory overtime at O'Donnell Park. Some Association members were working their regularly scheduled eight-hour shifts at the CCF-C, then immediately were sent by the Sheriff's Office to work an eight-hour overtime shift

at O'Donnell Park, and then having only four to five hours to rest before returning to CCF-C for their next day's shift.

15. The Association and Milwaukee County's most recent Collective Bargaining Agreement ("Agreement") addresses mandatory overtime. The Agreement is attached as **Exhibit A**. Section 3.02 states *inter alia*:

> In the event an employee refuses to accept an overtime assignment or there are insufficient volunteers for the work unit where overtime is required, the least senior employee in the classification in the work unit shall be required to work the overtime assignment.
>
> For an event identified by the Sheriff as a Special Event, the above procedure shall be utilized on a departmental basis.

16. At all pertinent times, Graber has been assigned to work at the CCF-C.

17. On the morning of June 25, 2010, Graber arrived at the CCF-C to start his shift. Graber was informed by Association members that only Deputy Sheriffs assigned to the CCF-C were being assigned to mandatory overtime at the O'Donnell Park scene.

18. Graber understood that the Sheriff's Office's Patrol Division was tasked with assigning the CCF-C Deputy Sheriffs to O'Donnell Park. Graber called the Patrol Division and spoke with Captain Thomas Meverden ("Meverden") regarding the O'Donnell Park assignment. Meverden explained that he charged Sergeant Carol Mascari with the task of putting out requests for volunteers for overtime at O'Donnell Park. Meverden confirmed only CCF-C Deputy Sheriffs were being used to staff the O'Donnell Park. Graber informed Meverden that the staffing was unfair and violated the Agreement.

19. After their initial conversation, Meverden called Graber back and requested that the Association waive the overtime requirements set forth in the Agreement so he could continue

to assign only CCF-C Deputy Sheriffs to O'Donnell Park. Graber refused to waive the requirements in the Agreement on behalf of Association members.

20. In the late morning of June 25, 2010, Graber then spoke with Deputy Inspector Nyklewicz ("Nyklewicz") regarding the O'Donnell Park staffing issue. Graber expressed frustration and disagreement with the use of only CCF-C Deputy Sheriffs to fill the overtime hours. Graber told Nyklewicz that the Deputy Sheriffs were working double shifts and were getting burned out. Upon information and belief, Nyklewicz informed Graber that the staffing issue was not up for discussion and ended the conversation.

21. At approximately 12:30 p.m. on June 25, 2010, Graber received a telephone call from Bailey. Bailey advised Graber that he should report to the Criminal Investigation Division conference room in the Sheriff's Office. Graber reported to the conference room as ordered by Bailey.

22. At approximately 1:00 p.m. on June 25, 2010, Bailey and Sheriff Clarke arrived at the conference room. Before entering the conference room, Bailey asked Graber if he was wearing any recording devices, to which Graber responded that he was not. Bailey looked Graber over and told him to enter the room.

23. Only Graber, Bailey, and Sheriff Clarke attended the meeting.

24. Sheriff Clarke began the meeting by asking Graber who runs the Department. Graber responded that Sheriff Clarke was the head of the Department. Upon information and belief, Sheriff Clarke responded that he does not "give a fuck" about what Graber thinks–that he, the Sheriff, has a job to do and he will do it the way he feels like doing it.

25. Upon information and belief, Graber was advised that "when a Captain calls and requests resources, he is to be given the resources." Graber was advised not to question a

Captain or to refuse to provide him with Deputy Sheriffs. Graber informed Sheriff Clarke and Bailey that a Captain never called him for resources nor did he ever refuse to give resources to a Captain. Sheriff Clarke then asked Graber if he had spoken with Meverden. Graber responded that he had spoken with Meverden earlier in the morning, but not on the night of the O'Donnell Park incident. Upon information and belief, Sheriff Clarke accused Graber of playing games with him and said it was just semantics. Graber replied that Meverden had called him requesting that Graber, as Vice President of the Association, waive the Agreement's requirements regarding mandatory overtime, which Graber refused to do. Sheriff Clarke then ordered Bailey to get Meverden on the phone, which he did, but Sheriff Clarke then advised that he would call Meverden later. Upon information and belief, Sheriff Clarke then stood up in his chair and yelled at Graber "I've got a dead child at the lake front and you are questioning mandatory overtime, you sick fuck!" Upon information and belief, Sheriff Clarke went on to state that he had a job to do and he doesn't care about "our fucking contract."

26. Sheriff Clarke stated to Graber that he is not to contact anyone other than Inspector Kevin Carr ("Carr") regarding contract issues. Upon information and belief, Sheriff Clarke indicated to Graber that if Graber ever contacted anyone other than Inspector Carr regarding Association duties, the Sheriff's Office would "come after" him.

27. Upon information and belief, Sheriff Clarke then told Graber the Association is always against everything that he does, and, as a result of Graber's participation with the Association, that Graber was a "fucking terrorist."

28. Graber replied that the Association does not fight Sheriff Clarke on everything he does and that he did not believe himself to be a terrorist.

29. Upon information and belief, Sheriff Clarke referred to Graber as a "mother

fucker" repeatedly during the meeting.

30. Graber asked Sheriff Clarke why he has been calling Graber a "fucker" throughout their meeting.

31. Upon information and belief, Sheriff Clarke responded "Because you're a fucker, just like the rest of them."

32. Graber responded "Well you don't know me very well then, Sheriff."

33. Upon information and belief, Sheriff Clarke then responded: "I don't want to know you, I want to get rid of you. I want your resignation." Sheriff Clarke then told Graber that he was the type of waste the Sheriff's Office was trying to "get rid of."

34. Upon information and belief, Sheriff Clarke told Graber he was a terrible supervisor. Graber replied that he was a hard worker and a good supervisor and that the Sheriff should check with Graber's supervisors regarding his performance. Upon information and belief, Sheriff Clarke replied that he didn't need to talk to Graber's supervisors, that he knows Graber, he knows Graber's rhetoric, he knows "his kind" and that Graber is a terrible supervisor.

35. Sheriff Clarke also objected to Graber having recently testified on behalf of the Association at a Milwaukee County Board of Supervisors meeting. Upon information and belief, Sheriff Clarke told Graber that he needed to support the Sheriff's Office, but instead had "fucked him in the ass again."

36. Upon information and belief, Sheriff Clarke told Graber that he should end his participation in the Association, because the Sheriff was winning in the public's eye and the union was losing. Upon information and belief, Sheriff Clarke stated "The public hates unions right now and they love me."

37. Sheriff Clarke also told Graber that he had done nothing to convince Sheriff

Clarke that he was any different than any other member of the Association leadership. Sheriff Clarke told Graber that he was sick of hearing Graber's name. Upon information and belief, Sheriff Clarke also told Graber that if he did not like the way Sheriff Clarke was running the Sheriff's Office, he should just resign.

38. Sheriff Clarke advised Graber that he didn't care about Deputy Sheriffs being required to work mandatory double shifts or that Deputy Sheriffs were required to work mandatory shifts with little or no notice. Upon information and belief, Sheriff Clarke stated that "they are cops and should expect to work long hours and should always have a contingency plan in place for daycare, etc." Upon information and belief, Sheriff Clarke advised Graber that he does not care about Deputy Sheriffs being inconvenienced, they are cops and should be told to "suck it up" when they come to the Association or to Graber for assistance.

39. Upon information and belief, Sheriff Clarke had a piece of paper in front of him that had been written by Nyklewicz regarding Graber's earlier conversation with Nyklewicz. Upon information and belief, referring back to the part of the conversation between Graber and Nyklewicz in which they discussed the potential for grievances related to the O'Donnell Park overtime issue, Sheriff Clarke stated to Graber "I don't give a fuck what you file."

40. The meeting between Graber, Bailey, and Sheriff Clarke lasted approximately two hours.

41. Since Sheriff Clarke verbally assaulted Graber, Sheriff Clarke suspended Graber for seven days related to a different incident. Graber and the Association challenged Sheriff Clarke's suspension and it was vacated in its entirety by the WERC in Milwaukee County, MA-14954 (Carne, 9/11). Notably, the arbitrator held that "it is difficult to imagine a good faith basis for the issuance of this discipline." Upon information and belief, Sheriff Clarke disciplined

Graber because he exercised his right to free speech and association.

42. Under Sheriff Clarke, Graber has received five disciplinary suspensions. Graber and the Association have successfully challenged four of the five discipline suspensions. The fifth suspension is currently pending before the Milwaukee County Personnel Review Board. A March 2007 five-day suspension was vacated in Milwaukee County, MA-13662 13662 (Michelstetter, 1/08); a late 2008 one-day suspension was vacated in Milwaukee County, MA-14183 (O'Callaghan, 6/09); a July 2009 two-day suspension was vacated in Milwaukee County, MA-14514 (Emery, 3/10); and a late 2010 seven-day suspension was vacated in Milwaukee County, MA-14954 (Carne, 9/11).

43. Graber also filed a complaint with the Wisconsin Employment Relations Commission ("WERC") alleging that Sheriff Clarke's actions in retaliating against Graber violated several provisions of Wis. Stat. § 111.70. On October 11, 2011, the WERC issued Decision No. 33209-A in favor of Graber holding that Sheriff Clarke's actions violated several statutory provisions. The WERC held that Sheriff Clarke violated Wis. Stat. § 111.70(3)(a)3 and derivatively Wis. Stat. § 111.70(3)(a)1 by interfering, restraining, and coercing Graber in the exercise of his right to engage in lawful, concerted activities for the purpose of collective bargaining with the Association.

**FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 First Amendment – Violation of Right to Free Association**

44. Plaintiff restates and re-alleges paragraphs 1 through 43 of this Amended Complaint.

45. Defendants intentionally discriminated and retaliated against Graber for engaging in free association with the Association. This association related to a matter of public concern and was protected by the First Amendment of the United States Constitution.

46. Upon information and belief, Graber's exercise of protected association with the Association was a substantial factor in Sheriff Clarke's decision to retaliate and discriminate against him.

47. Sheriff Clarke's interest as a government employer in providing services did not sufficiently outweigh Graber's right to associate freely with the Association.

48. At all pertinent times, Defendants were acting under the color of law, but were not protected by qualified immunity because it is well-established that retaliation for the exercise of protected association on a matter of public concern violates the First Amendment. See Pickering v. Board of Education, 391 U.S. 563 (1968).

49. As a direct result of the allegations described herein, Graber suffered damages to his earning capacity, benefits, and other compensation as well as suffered emotional pain, mental anguish, and harm to his reputation.

**SECOND CAUSE OF ACTION**
**42 U.S.C. § 1983 First Amendment – Violation of Right to Free Speech**

50. Plaintiff restates and re-alleges paragraphs 1 through 49 of this Amended Complaint.

51. Graber's speech related to a matter of public concern and was protected by the First Amendment of the United States Constitution.

52. Defendants intentionally discriminated and retaliated against Graber for engaging in free speech.

53. Upon information and belief, Graber's exercise of free speech was a substantial factor in Sheriff Clarke's decision to retaliate and discriminate against him.

54. Sheriff Clarke's interest as a government employer in providing services did not sufficiently outweigh Graber's right to speak freely regarding matters of public concern on behalf of the Association.

55. At all pertinent times, Defendants were acting under the color of law, but were not protected by qualified immunity because it is well-established that retaliation for the exercise of protected speech on a matter of public concern violates the First Amendment. See Pickering v. Board of Education, 391 U.S. 563 (1968).

56. As a direct result of the allegations described herein, Graber suffered damages to his earning capacity, benefits, and other compensation as well as suffered emotional pain, mental anguish, and harm to his reputation.

**THIRD CAUSE OF ACTION**
**Wis. Stat. §§ 164.015 & 164.03 – Violation of Wisconsin's Law Enforcement Officers' Bill of Rights**

57. Plaintiff restates and re-alleges paragraphs 1 through 56 of this Amended Complaint.

58. Wisconsin Stat. § 164.015 states:

> No law enforcement officer may be prohibited from engaging in political activity when not on duty or not otherwise acting in his official capacity, or be denied the right to refrain from engaging in political activity.

59. Graber was engaged in political activity with the Association on June 25, 2010.

60. Wisconsin Stat. § 164.03 states:

> No law enforcement officer may be discharged, disciplined, demoted or denied promotion, transfer or reassignment, or otherwise discriminated against in regard to employment, or threatened with any such treatment, by reason of the exercise of the rights under this chapter.

61. Defendants disciplined, discriminated against, and threatened Graber because he exercised his rights to engage in political activity under Wis. Stat. § 164.015.


Case 2:11-cv-01038-WEC Filed 03/15/12 Page 12 of 14 Document 18

62. As a direct and proximate cause of Defendants' violations of Wis. Stat. §§ 164.015 and 164.03, Graber has suffered damages to his earning capacity, benefits, and other compensation as well as suffered emotional pain, mental anguish, and harm to his reputation.

**DEMAND FOR RELIEF**

Wherefore Graber demands relief as follows:

A. The Court enter a judgment for Graber that Defendants violated Graber's rights of free association and speech under the First Amendment of the United States Constitution;

B. The Court enter a judgment for Graber that Defendants violated Graber's right to engage in political activity under Wis. Stat. § 164.03;

C. The Court award Graber compensatory damages for loss of earning capacity, benefits, and other compensation as well as emotional pain, mental anguish, and harm to his reputation to be determined by a jury;

D. The Court award Graber punitive damages to be determined by a jury;

E. The Court award Graber costs, disbursements, and reasonable attorney's fees pursuant to 42 U.S.C. § 1988;

F. With regards to MCMP:

a. Dismissing its subrogation and/or reimbursement interests in this matter in their entirety;

b. In the alterative, if MCMP fails to timely answer and appear, or fails to participate in the prosecution of this action, then for dismissal of MCMP and extinguishment of its alleged rights and interests in their entirety;



Case 2:11-cv-01038-WEC Filed 03/15/12 Page 13 of 14 Document 18

c. In the alternative, if MCMP timely answers and appears and participates in this matter, then for a determination of its alleged rights including, but not limited to, a determination and declaration that that they are not entitled to any recovery unless and until the Plaintiff has been made whole by any settlement or by funds available to satisfy any claim or judgment in this matter; and

G. The Court order such other relief as it may deem just, equitable, or appropriate.

PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY OF NOT LESS THAN 12 PERSONS.

Dated at Wauwatosa, Wisconsin, this 14th day of March, 2012.

**MacGILLIS WIEMER, LLC**
Attorneys for the Plaintiff, Richard P. Graber

Christopher J. MacGillis
State Bar No. 1068944

This Document Drafted By:
MacGillis Wiemer, LLC
2360 N. 124th Street, Suite 200
Wauwatosa, WI 53226
T: (414) 727-5150
F: (414) 727-5155
chris@macgilliswiemer.com